WILLARD SAULSBURY AND HUGH M. MORRIS, late trading under the firm name of SAULSBURY AND MORRIS, and ARTHUR J. SELFRIDGE, *vs.* AMERICAN VULCANIZED FIBRE COMPANY, a corporation existing under the laws of the State of Delaware.

1. EVIDENCE—PRODUCTION OF WRITTEN INSTRUMENTS ON NOTICE— EFFECT.

Where a party gives notice to the adverse party to produce a writing at the trial, and the adverse party without objection produces it, and the party inspects it, it becomes, at common law, evidence without further proof.

2. EVIDENCE—PRODUCTION OF WRITTEN INSTRUMENTS ON NOTICE— EFFECT.

The production of writings at the trial, pursuant to order of court under *Rev. Code* 1852, amended to 1893, *p.* 796, *c.* 107, § 13, as amended by 20 *Del. Laws, c.* 121, providing that in pending actions the court, on motion and due notice, may order a party to produce writings in his possession which contain evidence pertinent to the issue, merely makes available to the party applying for an order something that otherwise is beyond his reach; but to make the writing admissible he must prove it as though he had been in possession of it himself.

3. ATTORNEY AND CLIENT—COMPENSATION—CONTRACTS—CONSTRUCTION—"RETAINER".

A resolution by the board of directors of a corporation, which recites that attorneys named shall be retained on behalf of the corporation, to represent it in negotiations and in the prosecution of claims, and which directs payment to the attorneys of a specified sum as retainer, and a subsequent resolution, which fixes as compensation a contingent fee based on the amount of recovery, are, when accepted by the attorneys, separate contracts, and the attorneys are entitled to both the retainer fee and to the specified percentage on the amount recovered, without deduction of the amount of the retainer; a "retainer" being the act of a client by which he engages an attorney to manage for him a cause in which he is a party, or otherwise generally to advise him as counsel.

4. EVIDENCE—PAROL EVIDENCE—MODIFYING UNAMBIGUOUS CORPORATE RESOLUTIONS.

Parol evidence is inadmissible to change the effect of an unambiguous resolution of the board of directors of a corporation.

5. ATTORNEY AND CLIENT—COMPENSATION—CONTINGENT FEE.

An attorney employed to act for a client for a percentage of the amount recovered in a litigation is entitled to a percentage on the amount awarded the client, and also on an amount which the client would have been obliged to pay, but for a decree releasing him from liability.

*(June 11, 1914.)*

Judges WOOLLEY and RICE sitting.

*James I. Boyce* for plaintiffs.

*William S. Hilles* for defendant.

Superior Court, New Castle County, May Term, 1914.

SUMMONS CASE (No. 69, March Term, 1914).

Action of assumpsit by Willard Saulsbury and others against American Vulcanized Fibre Company to recover compensation for professional services rendered the defendant by the plaintiffs in instituting and conducting for the defendant certain litigation in the Court of Chancery of the State of Delaware. The issues of fact as well as of law were tried by the court, pursuant to the statute which permits trial in this manner when agreed to by the parties. See on error, — *Boyce* —, 95 *Atl.* 1078.

In opening, the plaintiffs stated that their case was to be proved largely by documentary evidence.

Selecting one from a great number of books, documents and papers produced by the defendant upon an order of the court,

made several days before the trial, Mr. Boyce said: I now offer this portion of these minutes in evidence, asked for by us to be produced by the defendant.

*Mr. Hilles:*—We have not been asked to produce; they have been produced in the prothonotary's office by an order of your Honors.

*Mr. Boyce:*—As I understand, this book has never been produced in the prothonotary's office.

WOOLLEY, J.:—If the minutes were produced by the defendant at the trial on notice from the plaintiffs, and were by them inspected, they thereby become evidence. If they were not so produced, but were produced upon the order of the court, such production and subsequent inspection do not make them evidence. Being made available by the court's order, they are here to be proven according to the rules of evidence.

*Mr. Boyce:*—These have been produced by the order of the court.

*Mr. Hilles:*—I have never received from the plaintiffs a notice to produce. I have produced these minutes upon the court's order for the purpose shown by that order.

WOOLLEY, J.:—The record discloses that on May fourteenth counsel for the plaintiffs notified counsel for the defendant that on May fifteenth he would move the court—

"to order the defendant to produce the books or writings mentioned in the schedule hereto appended, which said books or writings are in the possession or control of the defendant and which contain evidence pertinent to the issue, such production to be made *for use* during the pendency and *at the trial* of said cause under such terms and at such times as the court may direct."

Upon the date named in the notice, counsel for the plaintiffs made the motion for production, in conformity with the terms of the notice. Counsel for the defendant waived any question of the pertinency of the papers demanded, and submitted to an order to produce the same, stating, however, that he reserved to himself all rights to object to their introduction into evidence when offered.

This proceeding was had under a statute of this state which provides that:

"At any time during the pendency of actions at law, the court on motion and due notice thereof, may order a party to produce books or writings, in his possession or control, which contain evidence pertinent to the issue, under circumstances in which production of the same might be compelled by a Court of Chancery."   *Rev. Code, c.* 107, § 13, as amended by *Chapter* 121, *Volume* 20, *Laws of Delaware.*

Upon the plaintiffs' petition and by authority of this statute, the court—

"ordered, that the defendant do produce on the nineteenth day of May, 1914, the books or writings mentioned in schedule appended to the said motion and marked Exhibit A, at the office of the prothonotary of this court at Wilmington for the use and inspection of the plaintiffs during the pendency and at the trial of the said cause."

We understand that pursuant to that order, all the books and writings therein described, excepting certain of them shown not within the control of the defendant, were produced at the time and place named in the order and that they have since been transferred to and are now in the presence of the court. We also understand that the only notice for production made by the plaintiffs upon the defendant was the notice preliminary to the motion to produce. This being the state of the record, we will hear argument, if desired.

*Mr. Boyce:*—I offer as evidence the minutes of the meeting of the board of directors at which certain officers of the defendant company for the year 1913 were elected. Upon production by the defendant upon the court's order and after inspection by the plaintiffs, they are evidence under the decisions of this state, citing *Netter v. Stoeckle,* 4 *Penn.* 345, 56 *Atl.* 604; *Thomas v. Railroad Co.,* 2 *Penn.* 411, 47 *Atl.* 380; *Kelly v. Association,* 1 *Marv.* 183, 40 *Atl.* 954; *Frank v. Frank's Adm'r,* 1 *Houst.* 245; *Deringer v. Deringer's Adm'r,* 5 *Houst.* 148.

*Mr. Hilles:*—I hold they are not in evidence. The order which your Honors made in relation to these papers was that they were to be produced for the inspection of counsel on the other side prior to the trial of this case, and I think during the case. Unquestionably that is not a production of the paper or document upon notice given to the other side, which notice the counsel on the other side has the right to accept or decline to accept as

he sees fit.   Consequently if he does voluntarily produce such documents upon notice, the production by him voluntarily makes them evidence without further proof.   But certainly your Honors' order upon a party does not make the documents evidence, nor does it prove the validity of the documents offered.

WOOLLEY, J.:—[1]   There are two methods whereby a party may procure from his adversary documents and writings necessary to the proof of his case.   The first is the common-law method by giving the adverse party notice to produce the writing at the trial, and upon its production by the party notified and upon its inspection by the party calling for it, it becomes evidence without further proof.

The reason for this rule lies in the theory that the production of a writing on notice, without objection by the party producing it, amounts on his part to an admission of its genuineness and relevancy, and inspection by the party calling for it is in effect an offer of the writing as evidence, thereby dispensing with the necessity of formal proof.

Upon notice to produce a writing the party notified may object to its admission in evidence, and the question of its admissibility will be determined by the court before it is produced and submitted for inspection.   But if he fails to produce, when not relieved by an objection sustained by the court, the party calling for the instrument is then free to make proof thereof by secondary evidence.

This method was found to have its hazards and limitations, as it carried the risk of inspecting a paper when its contents were unknown, and restricted the use of the papers so produced, to evidence at trial, hence the enactment of the statute.

[2]   Under the statute the court may order a party to produce a writing shown to be pertinent to the cause, either for the inspection of a party before trial, or for use at trial, or, as in this case, for both purposes.   Upon such an application, usually made long before trial, the court does not pass upon the admissibility of the paper as evidence.   It makes the order upon being shown *prima facie* that the testimony sought is pertinent to the cause, and leaves the question of its admissibility to be determined when

it is later offered in evidence at the trial. When the order is to produce before trial, the object of the party asking for the production, may be to enable him, by inspection, to prepare his pleading or by making a copy to prepare for secondary evidence in the event of the failure of his adversary to produce on notice. When production is made for inspection before trial the order is obeyed when the production is made and the opportunity for inspection is afforded, after which the paper is returned to its owner and can be called for at trial only upon another order or upon notice to produce. If the party seeking the paper wants it at the trial, the court may so order its production. When in obedience to such an order it is produced at trial, it is by the order and the compliance therewith made available to the party calling for it. If he desires it simply for inspection, it is within his control for that purpose; if he desires it for evidence, it is for that purpose in his possession, and he may offer it in evidence upon such proof thereof as is required by the rules of evidence, in exactly the same way as though he gained possession of the instrument otherwise than through the court's order. The party producing the paper under the court's order then has his first opportunity to object to its admissibility as evidence, and to except to the ruling of the court. In other words, the production of writings at trial, under an order authorized by the statute, simply makes available to a party something that otherwise is beyond his reach, and if he chooses to obtain it in this way, he must prove it just as though he had been in possession of it himself. We know of no rule, however, that prevents a party resorting both to an order of court to produce at trial and the common-law notice to produce at trial, which was not done in this case. Whether performance under the notice is possible because of compliance with an order of the court to produce would seem to depend upon whether the party notified has such possession and control over writings as to enable him to produce them on notice, when under the court's order he has already produced and surrendered them.

There are many cases in our reports touching this statute, but in none of them has been decided the question whether a

writing produced under the order of the court becomes evidence upon its production and inspection in the sense in which it becomes evidence under the common-law rule of production under notice and inspection. The question was approached, but not decided, in the case of *Taylor v. Jackson*, 5 *Houst.* 224, 226, where counsel seeking papers from his adversary, in an abundance of caution supplemented the order of the court to produce by the common-law notice to produce, and then proved the paper by the subscribing witness, thereby indicating that the court did not hold the paper to be in evidence upon the production under its order and the subsequent inspection.

As the minutes in question are not evidence by force of their production under the court's order and their subsequent inspection, they must be proved before they are admitted.

Upon proof by the secretary of the defendant company, who transcribed them, the minutes were admitted in evidence.

The evidence produced and admitted on the part of the plaintiffs and defendant that has a bearing upon the decision in this case appears in the statement by the court.

WOOLLEY, J., announcing the decision of the court:

Under authority of the statute and by agreement of the parties, the matters of fact at issue in this cause were tried by the court, judgment to be rendered upon its decision thereon as upon a verdict by a jury. *Const. Art.* 4, § 23; *Chapter* 270, *Vol.* 11, *Laws of Delaware; Rev. Code of* 1893 *p.* 776. The case was tried, testimony offered, objections interposed, rulings made and exceptions noted in all respects similar to like proceedings in a trial by jury.

In order to preserve to the parties the same right of exception they would have had, if the case had been submitted to a jury upon a charge by the court, we will state our opinion upon the law as applied to our finding of fact.

This is an action in assumpsit, brought by the plaintiffs to recover from the defendant the sum of twenty thousand, three hundred and fifty dollars with lawful interest thereon from the third day of February, A. D. 1914, as compensation for pro-

fessional services rendered as solicitors for the defendant in certain litigation instituted, conducted and concluded in the Court of Chancery of the State of Delaware, pursuant to a contract in writing, disclosed by correspondence of the parties and by resolutions of the board of directors of the defendant corporation.

The claim of the plaintiffs is that by resolution of the board of directors of the defendant corporation, passed at a meeting held on the eighth day of April, 1913, they were retained as counsel and solicitors to represent the defendant in certain contemplated negotiations and impending litigation concerning the conduct and liability of one of its former officers, and that pursuant to another resolution of the board of directors of the defendant corporation, passed upon the twelfth day of June, A. D. 1913, they were paid, as retainer, the sum of three thousand dollars.

It is further claimed that in response to a communication from the plaintiffs, asking the defendant corporation to fix the compensation and proposing the terms for which they would render professional services in the matter in which they had been retained, the defendant corporation, by resolution of its board of directors, passed on the ninth day of July, 1913, accepted the terms proposed and promised to pay the plaintiffs for their professional services, a sum of money which when calculated with reference to the contingency upon which the same was to be computed, amounts to the sum of twenty thousand, three hundred and fifty dollars, for which sum, and the interest thereon from the day upon which it is claimed to have become due, they bring their suit.

The defendant does not controvert the correspondence and resolutions proven by the plaintiffs, and while not admitting does not deny its liability to pay the plaintiffs pursuant thereto the sum of seventeen thousand dollars. As to its liability to pay this sum, it made no defense. For defense, however, to the balance of the claim of three thousand, three hundred and fifty dollars, it maintains, first, that the sum of three thousand dollars paid by it to the plaintiffs nominally as retainer, was in fact a part payment for services rendered by the plaintiffs under the contract for services, and therefore should be deducted from the gross

sum computed and demanded; and, second, that the sum of three hundred and fifty dollars, being a part of the sum claimed by the plaintiffs based upon a percentage of the amount recovered in the chancery litigation, should be excluded from the demand, as it represents a sum estimated by percentage upon a principal sum never recovered, within the terms of the contract fixing the fee contingent upon the amount recovered.

The questions submitted for determination, therefore, are:

*First*, whether the three thousand dollars paid by the defendant to the plaintiffs, pursuant to resolution of its board of directors of June 12, 1913, was paid as a retainer or in part satisfaction for services rendered; and

*Second*, whether certain accrued and unpaid dividends, amounting to one thousand, seven hundred and fifty dollars, payable to but released by one of the parties to the chancery litigation, were a part of the recovery in that litigation, upon which the plaintiffs under the contract here sued upon might estimate and demand, as a part of their contingent fee, the sum of three hundred and fifty dollars.

While there was a great volume of testimony introduced in the case, that which was offered in proof of the contract between the parties was really circumscribed in amount and mostly documentary in character.

[3, 4] The first act of the parties appears by a resolution of the defendant corporation, passed by its board of directors, at a meeting held on April 8, 1913. The preamble to this resolution recites a transaction by a deceased officer of the company, which, if proven, established in the company a right of action against his personal representative for a very considerable sum of money. Following the preamble, which has no important relation to the matter now in question, is the resolution:

"It is resolved, that the said Arthur J. Selfridge and the firm of Saulsbury and Morris, of Wilmington, Delaware, be retained by and on behalf of this company to represent it in negotiations with the personal representative of the late president of this company and in the prosecution of any claim or claims, action or cause, which may be necessary to obtain for this company proper restitution of any sum or sums which may be due from the estate of the late president by way of accounting or for a rescission of the contract

by which such acquisition was made, and the officers of this company are directed to do and perform such acts and things as shall be necessary to carry this resolution into effect."

A copy of this resolution was transmitted by the vice-president of the company to the plaintiffs.

At a meeting of the board of directors of the defendant corporation, held on June 12, 1913, the following resolution was passed:

"*Resolved,* That the treasurer of this company be and he hereby is authorized and directed to pay to Arthur J. Selfridge and Saulsbury & Morris, Esqs., as counsel for this company as retainer for services in the cause of this company" against the executor of the late officer and others, "the sum of three thousand dollars."

A copy of this resolution was forwarded the same day to the plaintiffs by the treasurer of the company, together with a voucher for three thousand dollars, as shown by the following letter:

"Wilmington, Del., U. S. A., June 12, 1913.
"Messrs. Saulsbury & Morris and Mr. A. J. Selfridge—Gentlemen: We herewith hand you a voucher to the amount of three thousand dollars as retainer in the suit of equity in accordance with a resolution passed by the board of directors this day.
"Very truly yours,
"American Vulcanized Fibre Company,
"D. W. Masters, Treasurer."

In acknowledgment of the receipt of the copy of the resolution and the check for three thousand dollars, the plaintiffs upon the same day mailed to the defendant company a letter of which the following is a copy:

"Received of American Vulcanized Fibre Company, at the hands of D. W. Masters, treasurer, check for $3,000.00, as retainer for services in the cause of American Vulcanized Fibre Company, * * * pursuant to resolution adopted by the board of directors of American Vulcanized Fibre Company on June 12, A. D. 1913.
"Arthur J. Selfridge.
"Saulsbury & Morris.
"June 12, 1913."

For the time being this ended the transaction whereby the plaintiffs were retained by the defendant to represent it in the negotiations and litigation adverted to. Thus far the transaction was simply one of retainer, whereby the defendant engaged the

plaintiffs as counsel and paid them a retainer fee.   The contract was a contract of engagement and the consideration which bound the plaintiffs to the defendant was the fee paid by the defendant to the plaintiffs.   Up to this point nothing was said or done by either party respecting compensation for the services to be rendered in the matter in which the plaintiffs had been retained.

On July 2, 1913, the plaintiffs addressed to the defendant the first communication that appears, from the evidence, to have been made concerning compensation for services in the matter for which they had been engaged, and is as follows:

"July 2, 1913.

"American Vulcanized Fibre Company, Wilmington, Del.—Gentlemen: On the eighth day of April, 1913, by a resolution adopted by your board, we, with Arthur J. Selfridge, Esq., were retained by and on behalf of your company to represent it in negotiations with the personal representative of the late president of your company, and in the prosecution of any claim or claims, action or cause, which may be necessary to obtain for your company proper restitution of any sum or sums which may be due from the estate of the late president by way of accounting or for a rescission of the contract by which such acquisition was made.

"No compensation was fixed in said resolution for the services so to be rendered.

"We have considered this matter and request that you adopt a resolution fixing our fee for services under said resolution.          Saulsbury & Morris."
          "Yours very truly,

On July 9, 1913, the plaintiffs again wrote the defendant upon the subject of fixing compensation, stating the terms upon which they would render the services for which they had been engaged.   Upon the same day, the board of directors of the defendant company passed a resolution, the preamble of which embodied a copy of the plaintiffs' letter offering the terms, and by the remainder of which, accepted those terms in the precise language of the plaintiffs' offer.   The resolution without the preamble is as follows:

"Resolved, That this company does hereby accept said proposition and does hereby agree to pay to said attorneys from time to time all the expenses incurred by them in connection with the preparation, prosecution and trial of this cause and compensation for their services at the rate of one hundred dollars per day for each day spent by them in preparation, prosecution and trial thereof, from the inception to the termination thereof and in the event that twenty per centum of the amount recovered in said matters exceeds the amount so paid to them for their services, that they shall be paid a further sum equal to the difference between the sums so paid from time to time for

their services and twenty per centum of the amount so recovered, and that the secretary be and is hereby instructed to deliver to said Saulsbury & Morris and Arthur J. Selfridge a certified copy of this resolution showing the acceptance of the terms set forth in their communication."

The minutes of the several meetings of the board of directors at which these several resolutions were passed were formally approved at subsequent meetings.

If a copy of this resolution, with nothing further, had been transmitted to the plaintiffs, the defendant's unconditional acceptance of the plaintiff's offer to serve it upon the terms stated would have made a complete contract and the contractual transactions between the plaintiffs and the defendant would then have been, first, a contract of retainer for a fixed amount, and, second, a contract of services for a contingent amount. But when the secretary of the company forwarded a copy of this resolution to the plaintiffs, upon the day following its adoption, he sent with it the following letter:

"Wilmington, Del., U. S. A., July 10, 1913.
"Messrs. Saulsbury & Morris, 907 Market Street, Wilmington, Del. Gentlemen: In compliance with the instructions contained in a resolution of the board of directors of this company passed at their meeting of July 9th, I am inclosing herewith certified copy of said resolution.
"Very truly yours,
"American Vulcanized Fibre Co.,
"T. W. Campbell, Sec.
"P. S.    It is understood that the three thousand dollars paid to you already by this company is part of the fees contemplated by this resolution."

Though not appearing to be a corporate act in the sense of a resolution of the board of directors, this letter was sent to the plaintiffs and received by them with the copy of the resolution, and was notice to the plaintiffs, at the instant the corporate act was communicated to them, of an understanding on the part of some one that the three thousand dollars already paid to them was a part of the fees contemplated by the resolution. Whether that understanding was the understanding of the corporation, evidenced by an act contemporaneous with and of legal force equal to that of the resolution, was something of which, at that time, the court was not informed. We therefore admitted the letter upon the theory that it would have a value as evidence according only as the authority for its contents and transmission should.

thereafter be shown. Over objections by the plaintiffs we also admitted testimony offered by the defendant as to the meaning of the postscript in the letter quoted, not to vary the terms of the resolution, but upon the theory that if the defendant could show that the resolution passed on July 9, 1913, did not constitute an absolute and unqualified acceptance of the plaintiffs' offer, but in fact at that meeting, or before the copy of the resolution reached the plaintiffs, the defendant, by a corporate act with legal force equal to that of the resolution, authorized the postscript made by the secretary in his letter, the plaintiffs would be bound by the notice in the postscript, and that it then devolved upon them to reject the counter offer, or accept it formally by word or conduct. But the evidence produced by the defendant showed no such thing. It developed that many, if not all, the directors thought, and the secretary so wrote, that the three thousand dollars already paid, was to be credited by the plaintiffs on account of services rendered and to be rendered; but no motion was put nor resolution proposed to that effect, nor other thing done to change the unqualified acceptance of the plaintiffs' proposition as evidenced by the resolution passed. In other words, it developed from the testimony that the only corporate act performed by the defendant with respect to the plaintiffs' offer was to accept it, and that while the understanding of the secretary in transmitting the resolution of acceptance to the plaintiffs may have been the understanding of the directors who voted for it, they did not express that understanding in the resolution, or by any other motion or act, nor did they convey their understanding to the plaintiffs so that in law there could have been a meeting of minds upon the point. Parol evidence to change the effect of an ambiguous resolution passed by an authorized board of a corporation is inadmissible, or, if admitted, is without effect. *Lipsett v. Hassard*, 158 *Mich*. 509, 122 *N. W*. 1091. We are therefore of opinion that the resolution of July 9, 1913, was a complete and unqualified acceptance of the plaintiffs' offer, and that its legal effect is not disturbed by the unexpressed understanding of the directors to the contrary.

Whether the three thousand dollars, paid as retainer, could

in law be considered part payment for services performed, in the absence of an express agreement to that effect by both of the parties, is a question that depends upon the meaning of a retainer and the purpose for which the retainer fee was paid.

There are various definitions of a retaining fee or a retainer. While the habit to demand and the right to expect such a fee may vary with custom in different jurisdictions, nevertheless when a retainer is asked and paid its purpose and its relation to payment for services subsequently rendered have a clear and certain meaning in the law.

A retainer is the act of a client by which he engages an attorney to manage for him a cause in which he is a party or otherwise generally to advise him as counsel. This act consists in paying to the attorney a preliminary fee to secure his services, or rather, as it has been said, to prevent the opposite side from engaging him. Unless there is an agreement or understanding between the attorney and the client at the time the retainer is demanded and paid that varies the purpose of the retainer, by stipulating that it shall be paid or received for some other or additional purpose as, for instance, that it shall not only bind the attorney to render the service, but it shall also be accepted by him in part payment for the same when rendered, the payment of a retainer has no relation to the obligation of the client to pay his attorney for the services which he has retained him to perform. In other words, a retaining fee is an engagement fee; that is, a fee to engage and hold an attorney to render services to a client in a particular case or generally as occasion may arise. In such a transaction a client gives money to insure the services of the attorney of his choice, and the attorney by accepting the retainer binds himself to that service and foregoes the opportunity of employment by the opposite party. This is the contract and these are the detriments which form the consideration thereof moving from one to the other. As such engagements are generally made without any idea, or any adequate idea, of the amount of services to be rendered, or the amount of compensation to be made therefor, the payment of a retainer fee in the absence of an express understanding to the contrary is neither made nor received in payment of

the services contemplated, though undoubtedly the payment and the size of such a fee may be and frequently is considered by both parties as an ingredient entering into the contract which they may make with respect to the fee subsequently to be charged and paid for the services to be rendered. 4 *Cyc.* 926, 982; 34 *Cyc.* 1685, 1686, and cases cited; *Blair v. Columbian Co.*, 191 *Mass.* 333, 77 *N. E.* 762; *Union Surety Co. v. Tenney*, 200 *Ill.* 349, 65 *N. E.* 688; *Knight v. Russ*, 77 *Cal.* 410, 19 *Pac.* 698; *Perry v. Lord*, 111 *Mass.* 504; *Eggleston v. Boardman*, 37 *Mich.* 14; *Rhode Island Exchange Bank v. Hawkins*, 6 *R. I.* 198, 206.

We are of opinion, and therefore decide, that in this case there were two contracts between the plaintiffs and the defendant—*first*, a contract of retainer, entered into by resolution and completed by the payment of three thousand dollars; *second*, a contract for services, in which the plaintiffs are entitled to twenty per cent. of the amount recovered, without deduction of the amount paid as retainer.

[5] By the decree of the Chancellor in the litigation prosecuted by the plaintiffs under their employment by the defendant, entered in the Court of Chancery at New Castle County on January 7, .1914, one of the defendants in that litigation was ordered to pay the defendant in this case one hundred thousand dollars, and that amount having been recovered, the plaintiffs are entitled to twenty per cent. thereof, or twenty thousand dollars. The defendant in that litigation was likewise ordered by the Chancellor to release the defendant in this case from payment of accrued and unpaid dividends on five hundred shares of the preferred stock of this defendant company, amounting to one thousand, seven hundred and fifty dollars, withheld by it pending the litigation, and which, but for the order of the Chancellor, this defendant company would have to pay. Release from this liability constitutes recovery by the defendant as completely as though it acquired in that litigation an equal amount of money in some other way. Upon this recovery, the plaintiffs are entitled to twenty per cent., or three hundred and fifty dollars.

And now, to wit, this eleventh day of June, A. D. 1914, upon the decision rendered by the court in this case, it is ordered that

judgment be entered in favor of the plaintiffs and against the defendant for the sum of twenty thousand, seven hundred and eighty-four dollars and seven cents, with six cents costs, besides the costs in this suit expended.