No. 35,084

MARY POWELL KIRWIN et al., *Appellants*, v. C. OAKLEY McINTOSH, *Appellee*.

(110 P. 2d 735)

Opinion filed March 8, 1941.

*Melvin E. Buck*, of Kansas City, for the appellants.
*Thomas Amory Lee*, of Topeka, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This was an action to recover an alleged overpayment of an attorney's fee. The defendant prevailed, and the plaintiffs appeal.

The case has been here before, on appeal from an order overruling defendant's demurrer to the petition, the judgment being affirmed. In view of the recital contained in the opinion at that time (*Kirwin v. McIntosh*, 151 Kan. 289, 98 P. 2d 160) a brief narration of the facts will suffice.

Reuben Denton and Zoa Denton, his wife, residents of Osage county, Kansas, died intestate in February, 1935, leaving eight children as their sole heirs. Their estate consisted of real estate valued

at about $11,000 and personal property worth approximately $9,000. Soon after the death of their parents, three of the children—the appellants in this action—entered into a written contract with the appellee, in which he agreed to give them legal advice and to secure for them as soon as possible their respective shares in the estate, for which services they agreed to pay a reasonable fee to be determined by him on the basis of the work required and not to be less than $75 nor more than $200 for each of the three of them. The personal property was distributed or disposed of, apparently without any trouble, and the heirs endeavored to agree upon an equitable division of the real estate or to dispose of it at private sale in order to make distribution. The administrator, appointed for the joint estate, and the appellee assisted in these negotiations. No other means of distribution being found possible, an action to partition the real estate was brought in October, 1936, in which the appellee engaged associate counsel to assist him. The real estate was duly sold, the gross amount realized being about $16,000, from which amount about $4,600 had to be deducted to discharge existing liens. Allowance of $1,700 was made as attorneys' fees—to five attorneys—and this, together with taxes and court costs deducted, left about $13,350 for distribution to the heirs, the share of each appellant being $1,669.64. Appellee agrees that he and his associate counsel were allowed fees in the partition action aggregating $928.14.

Appellee then collected from the three appellants the maxiumum fee of $600 fixed in the written contract, without their knowledge of the fee of $928.14 allowed by the court and paid from the proceeds of the sale.

Contending that under the written contract appellee had agreed to do everything possible to get for them their share of the estate, both real and personal, for a maximum attorney's fee of $600, appellants brought this action to recover an amount equal to the portion of the allowance in the partition action which came out of their distributive share of the proceeds. Appellants being entitled to three-eighths of the net proceeds of the sale, they contend that three-eighths of appellee's fee allowed in the partition action came out of their distributive shares, and that appellee should have credited them with such amount on their written contract with him. They accordingly sought recovery of $348.06, that amount being three-eighths of $928.14, as overpayment.

It seems necessary again to make clear, as we did in the former

opinion, the nature of this action. It is not an attack either direct or collateral upon the allowances made in the partition suit. It is not as appellee argues, based upon a contention that the appellee had not fully performed the legal services which he agreed to perform under the written contract. There appears no reason to misunderstand the nature of the action. Appellants simply alleged that appellee had agreed to perform for them certain services for a maximum fee of $600, that they paid him such fee but without knowing at the time that he had collected a total of $928.14 in the partition suit and asked to recover the overpayment of $348.06, which came out of their distributive shares.

The primary question presented to the trial court was to determine the meaning of the written contract. If the contract is unambiguous in character, and according to its terms the appellee agreed to take whatever steps necessary to secure to appellants their share of the estate, both real and personal, then judgment should have been for appellants, unless it be found that the written contract had been superseded by another contract between the parties.

Appellee's contention is that a partition suit was not in the contemplation of the parties at the time the written contract was entered into, and therefore, the allowances made in that action have no connection with the contract. Appellants rely upon the terms of the written contract and allege that they had in mind any steps necessary to be taken to secure their share of the estate.

The contract reads as follows:

"This is an agreement between C. Oakley McIntosh, as attorney, and each of the undersigned parties.

"C. Oakley McIntosh is party of the first part and each of the undersigned a party of the second part.

"Now the parties of the second part are heirs at law of Zoa and Reuben Denton, deceased. They hereby employ Mr. McIntosh to give them legal advice and proceed at once to get for them their respective share of the said estate. Mr. McIntosh agrees to the best of his ability to do all that an attorney could and should do in their behalf, to the effect that they shall each get their partial shares as soon as possible and that they shall each get their full and final shares as soon as possible. Now each of the undersigned parties of the second part hereby agrees to pay a reasonable fee for such services to be determined by Mr. McIntosh according to the amount of work involved. Said fee shall not in any instance be less than $75 or more than $200 per party of the second part."

It is well to note at the outset that this contract was drawn by appellee, an attorney, to cover an agreement between himself and

his clients, who are not attorneys. That the relationship of an attorney to his clients is fiduciary in character, binding him to the highest degree of fidelity to them on account of the trust and confidence imposed, is elementary and requires no support by citation of authorities. In accordance with that basic principle, it is the general rule that in the construing of contracts between attorney and client, where there is any ambiguity, doubts are resolved against the attorney and the construction adopted which is favorable to the client. (7 C. J. S. 1055.) Of course if the client, by statements or actions subsequent to the execution of the contract, has indicated an interpretation inconsistent with that for which he later contends, or where the obvious intent of the parties would be violated by strict interpretation of the written instrument, the general rule does not apply. (7 C. J. S. 1056.) However, we find no ambiguity in the instant contract and the record discloses no acts or statements by the clients tending to give an interpretation inconsistent with its plain provisions. The contract provides: "Mr. McIntosh agrees to the best of his ability *to do all that an attorney could and should do* in their behalf, to the effect that they shall each get their partial shares as soon as possible and *that they shall each get their full and final* shares as soon as possible" (italics ours). It cannot be questioned that the full shares of appellants included their interest in the real estate. In his testimony appellee admitted that the terms of the contract included both realty and personalty. Indeed, he narrated his efforts and introduced copies of correspondence to show what he did to get the heirs to agree on a division, or to sell the real estate at private sale in order that they might get their full share of the estate. His only contention is that when he drew the contract it was not thought that a partition suit would be necessary to get final settlement of the estate. He does not contend, however, that there was at that time any understanding that an additional fee would be claimed if a partition action were found necessary.

Appellee did not advise his clients that he had been allowed fees by the court and says that he did not think it incumbent upon him to do so. The record discloses an absence of that frankness with clients and with the court which we should expect to find under such circumstances. The only testimony which can possibly be said to indicate an agreement between the parties, subsequent to the written contract, is appellee's statement that he told one of the appellants that

he couldn't get any settlement except by partition and that "I told her the expenses would come out of the partition suit, and I believe she asked me if all expenses and I told her they would be. She told me to go ahead and partition it." Even so, advice to her that the expenses would come out of the proceeds of the sale was not advice that an additional attorney's fee would be expected. However that may be, the trial court did not find that there was a subsequent oral contract that additional fees were to be paid. We now turn to the finding of the trial court.

Following formal recitals, the journal entry of judgment reads:

"And now on this 19th day of July, 1940, the court being fully advised in the premises finds that the contract sued upon and set forth in the petition was completely performed by the defendant and that the defendant should have judgment against the plaintiff for the costs of this action."

The trial court's judgment is based solely on the written contract and the finding is that the "contract sued upon and set forth in the petition was completely performed by the defendant." Such a finding was not within the issue raised by the pleadings or by the evidence. Appellants neither alleged in the petition nor attempted to prove that appellee did not completely perform the services called for by the contract. They admitted that he performed those services. They only contended that he had collected more for the services than called for by the contract.

It is perfectly clear that both parties had in mind both the real and the personal property when they entered into the contract in which appellee agreed to do whatever an attorney "could and should do" to get them their full share of the estate. There being no ambiguity in the written contract, and there being no showing or finding that the written contract was superseded by a later contract, oral or written, appellants were entitled to judgment.

One further matter requires attention. Appellee alleged in his answer that Hattie Bixby, one of the plaintiffs, had signed an agreement on August 29, 1938—copy of which was attached and made a part of the answer—whereby she accepted $25 as a compromise settlement of the controversy concerning the attorney's fee and released all further claim in the matter. Appellants filed no reply. They filed a motion for judgment on the pleadings and a demurrer to the answer, both of which were overruled. The matter was not discussed by appellants either in their brief or oral argument. The

record discloses that Hattie Bixby testified concerning the circumstances under which the compromise settlement was urged upon her but did not deny its execution. Appellants did not ask to have the accord and satisfaction set aside, did not attack it by motion or otherwise in the pleadings, did not tender return of the $25 nor offer to have it credited on the judgment sought. On this record the release must be accepted as final as far as Hattie Bixby is concerned and the judgment of the trial court as to her claim will not be disturbed.

The only matter remaining for consideration is the amount of the judgment to which appellants are entitled. Appellee asserts that in any event appellants would not be entitled to full recovery of the amount asked since he also represented in the partition action another plaintiff, LeRoy Denton, and also represented as guardian one of the defendants, an insane person, and that his associate counsel also represented him as such guardian. For that reason, it was urged by appellee when the case was here before, it was impossible for either court or plaintiffs to segregate or separate the allowances for attorney's fees made in the partition action and determine what portion was chargeable to appellants. We accept and adopt appellee's contention in that regard. That being true, it would certainly be inequitable to penalize appellants on that account and deny recovery. Especially so in view of appellee's failure to disclose all the facts either to the court or to his clients. The defendant's liability is established. It would confer no favor upon him to return the case to the trial court for further proceedings to determine the amount of the judgment. It would only prolong the litigation over a liability which defendant cannot escape. The facts are before us for computation. Under such circumstances, both in compliance with the mandate of the code that this court enter such final judgment as it deems justice to require (G. S. 1935, 60-3317) and in harmony with the rule followed by this court in a long line of decisions (*Harmon v. Coonrod,* 148 Kan. 146, 154, 79 P. 2d 831; *Cox v. Trousdale,* 138 Kan. 633, 645, 27 P. 2d 298, and cases there cited), final judgment will here be rendered. We think the method of computation advanced by appellants is an equitable one under all the circumstances. They do not here attack any part of the allowance of $928.14 made in the partition action. They only ask refund of $348.06, the amount by which their net share of the estate was thereby depleted. Deducting one-third of this

$348.06, on account of the release by Hattie Bixby, leaves $232.04, for which amount appellants Mary Powell Kirwin and Ellen Denton are entitled to judgment, together with costs of the action.

The conclusion stated makes it unnecessary to consider other contentions of appellants.

The judgment is reversed and the case remanded with instructions to enter judgment for the defendant as to the claim of Hattie Bixby, and to enter judgment against the defendant and in favor of plaintiffs Mary Powell Kirwin and Ellen Denton for $232.04 and costs of the action.

ALLEN, J., dissents.