Ron LEVINE and Serena
Levine, Petitioners,

v.

BAYNE, SNELL & KRAUSE,
LTD., Respondent.

No. 99–0981.

Supreme Court of Texas.

Argued April 12, 2000.

Decided Feb. 1, 2001.

Rehearing Overruled April 5, 2001.

Roger W. Hughes, Adams & Graham, Harlingen, Dana R. Allison, The Allison Law Firm, Brownsville, Thomas Clayton Hollis, Elms & Harmon, San Antonio, for Petitioners.

Barry Snell, Bayne Snell & Krause, San Antonio, Shephen E. McConnico, Jan M.N. Webre, Scott Douglass & McConnico, Austin, for Respondent.

Justice ENOCH delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice BAKER, Justice HANKINSON, and Justice O'NEILL join..

Ron and Serena Levine agreed to pay their lawyers one-third of "any amount received by settlement or recovery" from their lawsuit against Donald and Pat Smith. The Levines obtained an award against the Smiths, but the award was offset by the Smiths' successful counterclaim. The Levines and their attorneys now argue over how to calculate the one-third contingent fee-Should the fee be calculated on the full amount awarded to the Levines, or should it be calculated on the amount awarded to the Levines after the offset is subtracted? The trial court and court of appeals concluded that the attorneys were entitled to one-third of the full amount awarded. Because we disagree,

we reverse the court of appeals' judgment and render judgment that the Levines owe nothing further to their attorneys.

The Levines hired Bayne, Snell & Krause, Ltd. to sue the Smiths for their failure to disclose foundation defects in the home they sold to the Levines. Because of the alleged foundation defects, the Levines stopped making mortgage payments to the Smiths, who had financed the house purchase. The Smiths therefore counterclaimed for breach of the mortgage agreement.

After a jury verdict, the trial judge awarded the Levines $243,644 in damages for the foundation defects, along with interest and attorney's fees. But the court also found that the Smiths were entitled to the balance due on the mortgage, accrued interest and attorney's fees, all of which totaled $161,851.38. The trial court thus offset the Levines' $243,644 award with the Smiths' $161,851.38 recovery, resulting in an $81,792.62 judgment for the Levines. The offset extinguished the Levines' mortgage obligation, giving them clear title to their home.

After the court of appeals affirmed the trial court's judgment, the Smiths paid the Levines $104,110.31, which included $81,792.62 plus interest that had accrued during the appeal. Bayne/Snell then sent the Levines a statement claiming $155,866.13 in fees: one-third of the Levines' award *before* the offset, prejudgment interest, and costs; plus court-awarded attorney's fees, and post-judgment interest and expenses.

The Levines disagreed with Bayne/Snell's fee calculation because the calculation did not reflect the trial court's offset for the Smith's successful counterclaim. In any event, though still contesting the fees, the Levines endorsed the Smiths' check for $104,110.31 over to Bayne/Snell

to pay the attorney's fees. And because the Levines refused to pay the remainder, Bayne/Snell sued.

The Levines, in their briefing, do not specify the amount they believed they owed Bayne/Snell. But they apparently estimate that the one-third fee should have been calculated on the approximately $36,000 difference between the Levines' total damages and prejudgment interest and the Smiths' total damages and pre-judgment interest; added to court-awarded attorney fees, post-judgment interest, and expenses. Regardless, although the $104,110.31 the Levines paid Bayne/Snell is greater than the amount the Levines would pay under the net recovery method, they have not asked for money back from the firm.

■ The Levines' contract with Bayne/Snell provided in part:

Client agrees to pay attorney as attorney's fees for such representation 33–1/3% (1/3) of *any amount received* by settlement or recovery and to receive such payments, Client assigns to attorney a 33–1/3% (1/3) undivided interest in his cause of action.

Any attorneys fees awarded by any court shall go to my attorneys in addition to the above percentages of recovery.[1]

The contingent attorney's fee contract in this case does not define "any amount received."

■ Section 35 of the Restatement (Third) of the Law Governing Lawyers and its comment answer the question the parties pose. That section states that "when a lawyer has contracted for a con-

tingent fee, the lawyer is entitled to receive the specified fee only when and *to the extent the client receives payment.*"[2] And comment d explains: that "[i]n the absence of [a] prior agreement to the contrary, the amount of the client's recovery is computed net of any offset, such as a recovery by an opposing party on a counterclaim."[3]

Some courts, in cases similar to this one, have opted to apply the fee to the client's full award, reasoning that such a calculation better reflects the comprehensive value of the attorney's services and the economic value received by the client. For instance, in *Manzo v. Dullea,* the court approved a fee applied to a full award under an insurance policy, although a portion of the award had been deducted and retained by the insurer in satisfaction of mortgages that had been assigned to the insurer. The court reasoned "[t]hat part of the judgment was used to pay for a debt for which [the client] was personally liable and which, but for the successful efforts of the attorney in collecting the insurance by suit, would have been left a debt secured by the mortgages...."[4] In *Consolidated Underwriters of South Carolina Insurance Co. v. Bradshaw,* the court held that an attorney fee was calculable on the full award, even though part of the judgment was paid to the client's mortgagee, because it "was in fact a recovery ... since it extinguished [the client's] debt."[5] And in *Saulsbury v. American Vulcanized Fibre Co.,* the court concluded that an attorney, employed to act for a client for a percentage of the amount recovered, was entitled to a percentage of the amount that the client would have been required to pay,

1. (Emphasis added.)

2. RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 35 (1998) (emphasis added).

3. *See id.* cmt. d.

4. 96 F.2d 135, 137 (2nd Cir.1938).

5. 136 F.Supp. 395, 403 (W.D.Ark.1955).

but from which the client was released by the court's decree.[6]

Here, the Levines unquestionably benefitted, financially, beyond recovering a money judgment for $81,792.62. The judgment extinguished their mortgage obligation, allowing them to receive clear title to their home. But sound reasons convince us that we should apply section 35 of the Restatement and interpret "any amount received" to mean net recovery.

■ Such an interpretation rests on the premise that "lawyers are more able than most clients to detect and clarify omissions in client-lawyer contracts" because "lawyers almost always write such contracts" and are more familiar with the intricacies of legal representation and with the law and drafting of fee agreements and other contracts.[7] For example, the Indiana Supreme Court has stated, "[l]awyers almost always possess the more sophisticated understanding of fee arrangements. It is therefore appropriate to place the balance of the burden of fair dealing and the allotment of risk in the hands of the lawyer in regard to fee arrangements with clients."[8] Similarly, the California Supreme Court has added that attorneys are "presumably familiar with legal terms and proceedings and accustomed to the use of language appropriate to the framing of contracts...."[9] Motivated by some of these concerns, courts in other jurisdictions have already applied this rule in construing contracts in lawyer-client fee disputes.[10] Because the lawyer is better able than the client to predict and provide for fee arrangements based on recoveries diverging from the traditional payment actually received, the burden should fall on the lawyer to express in a contract with the client whether the contingent fee will be calculated on non-cash benefits as well as money damages.

■ To place this burden upon attorneys is justified not only by the attorney's sophistication, but also by the relationship of trust between attorney and client. As the Minnesota Supreme Court has concluded, to impose the obligation of clarifying attorney-client contracts upon the attorney "is entirely reasonable, both because of [the attorney's] greater knowledge and experience with respect to fee arrangements and because of the trust [the] client has placed in [the attorney]."[11]

Courts that follow Section 18(2)'s approach in calculating an attorney's fee on the client's net recovery also do so because contingency fee contracts allocate the risk of non-recovery to the attorney. A Kentucky court of appeals, applying the fee to the net recovery, reasoned that when attorneys accept employment to bring suit, they do so "with at least the implied knowledge that the contemplated suit is liable to be defeated by any of the defens-

**6.** 91 A. 536, 542 (Del.Super.Ct.1914)

**7.** RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 18 cmt. h (1998).

**8.** *In re Myers,* 663 N.E.2d 771, 774–75 (Ind. 1996).

**9.** *Bennett v. Potter,* 180 Cal. 736, 183 P. 156, 158 (1919).

**10.** *See Hamilton v. Ford Motor Co.,* 636 F.2d 745, 748 (D.C.Cir.1980) (holding that this principle applies with even greater force in the attorney-client context because the client has had no legal training); *Kirwin v. McIntosh,* 153 Kan. 395, 110 P.2d 735, 737 (1941); *In re Irwin,* 162 Or. 221, 91 P.2d 518, 523 (1939) (construing retainer agreement against lawyer based on the lawyer's superior knowledge of the work covered by the agreement).

**11.** *Cardenas v. Ramsey County,* 322 N.W.2d 191, 194 (Minn.1982). *See also Kirwin,* 110 P.2d at 736–37 (also citing the fiduciary relationship between lawyer and client as a reason to construe contracts against a lawyer).

es allowed by law, including a plea of set-off." [12] And a New York appellate court applied the fee to the net recovery, concluding that the lawyer "assumed the risk that the recovery in moneys would be diminished by the allowance of the . . . counterclaim." [13]

■ Our holding is not novel; rather, it simply emphasizes one facet of a lawyer's duty to the client, *i.e.,* to inform a client of the basis or rate of the fee at the outset of the matter.[14] Importantly, requiring the attorney to better stipulate whether the attorney and client contemplate a fee calculated on the total value or net monetary recovery benefits the client, the lawyer, and the legal system by encouraging better communication and thereby reducing later disputes about what was communicated. This holding even avoids disputes arising from situations in which the client fails to reveal important information to the lawyer or ignores the lawyer's recommendations. The lawyer can simply provide for these situations ahead of time, making it clear in the agreement that the client cannot reduce his bill by deceiving the lawyer.

Because in this case the contingent fee contract did not provide otherwise, "any amount received" refers only to the net amount of the client's recovery. We, therefore, conclude that no further fee is due from the Levines to their attorneys. Accordingly, we reverse the judgment of the court of appeals and render judgment for the Levines.

Justice OWEN filed a concurring opinion.

Justice HECHT filed a dissenting opinion, in which Justice ABBOTT joined.

**12.** *Wooldridge v. Bradbury,* 185 Ky. 587, 215 S.W. 406, 408 (1919).

**13.** *Mackey v. Passaic,* 266 A.D. 690, 40 N.Y.S.2d 613, 614 (1943).

Justice OWEN, concurring.

I concur in the judgment in this case, but the Court's opinion is overly broad. The term "any amount received" is unambiguous and connotes a dollar amount received by the client rather than a non-cash recovery. But not all counterclaims or setoffs should diminish an attorney's contingent fee that is based on a percentage of "any amount received." In some situations, an attorney should be able to assert a claim against a client for misrepresentation or breach of an express or implied contractual covenant and thereby recover a fee based on the amount awarded for the client's affirmative claims without any reduction for offsets. In this case, if the Levines had been directed by their counsel to continue payments on their mortgage, had been fully apprised of the consequences of nonpayment, and had then stopped paying their mortgage, the outcome in this case should be different. And in other cases, if a client takes action after a fee agreement is consummated that would not be reasonably anticipated by counsel, and that action gives rise to a counterclaim, the attorney's contingent fee should not be diminished. Accordingly, although I agree with the Court that the Levines are entitled to judgment in their favor, I cannot join the Court's expansive statements about the respective rights and obligations in the attorney-client relationship.

## I

The Court relies on certain passages of the Restatement (Third) of The Law Gov-

**14.** *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 38 (1998).

erning Lawyers, but I respectfully submit that the Court has not explained fully the Restatement's overall view of the matter of fees in an attorney-client relationship. Under some circumstances, a lawyer should be entitled to a contingent fee based on the amount awarded for a successful claim without any adjustment or credit for a counterclaim or offset that reduces the amount of the judgment.

I agree that, generally speaking, a contingent fee agreement that provides for a percentage of "recovery" means that "the lawyer is entitled to receive the specified fee only when and to the extent the client receives payment," and "[i]n the absence of prior agreement to the contrary, the amount of the client's recovery is computed net of any offset, such as a recovery by an opposing party on a counterclaim." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 35(2) cmt. d (2000); *id.* § 35(2). However, there are several other important principles set forth in the Restatement that bear on what an attorney's fee should be when there is a counterclaim.

First, "[a] tribunal should construe an agreement between client and lawyer as a reasonable person in the circumstances of the client would have construed it." *Id.* § 18(2). A corollary of that principle is that "[t]o determine what events client and lawyer contemplated, their contract must be construed in light of its goals and circumstances and in light of the possibilities discussed with the client." *Id.* § 34 cmt. c. The lawyer has a duty to "explain the basis and rate of the fee ... and advise the client of such matters as conflicts of interest, the scope of the representation, and the agreement's implications for the client." *Id.* § 18 cmt. c. It is the lawyer who "bears the burden of ensuring that the agreement states any terms diverging from a reasonable client's expectations." *Id.* § 18 cmt. h. But the client also has

obligations to its counsel. There may be consequences if a client "lies to a lawyer or fails to honor an expressed or implied provision of a client-lawyer agreement requiring cooperation with the lawyer." *Id.* § 17 cmt. d.

In light of these principles, the Court misses the mark in holding that unless a fee agreement specifically addresses counterclaims or offsets, a lawyer's contingent fee should always be reduced by a counterclaim. Whether a contingent fee should be based on a client's net or gross recovery should depend on when the facts that give rise to a counterclaim come into existence, the degree to which a counterclaim is related to a client's claim, and the client's forthrightness with its counsel.

A few examples will hopefully illustrate the point that I wish to make. Suppose that a client engages an attorney to sue for negligence in connection with an auto accident. After the client has consulted with counsel and has agreed to pay a contingent fee of one-third of "any amount received," the client has an argument with the defendant-driver he has sued and physically assaults her. She asserts a counterclaim for her injuries. Under those circumstances, the client should be required to pay a contingent fee based on the amount he recovers for the defendant's negligence without regard to any amounts the defendant recovers on her counterclaim for assault. The client would have breached an implied covenant not to destroy or diminish the value of the subject matter of the contract, which under my example is the value of the negligence claim. The lawyer had no obligation to explain to the client at the time the fee agreement was negotiated that if the client physically assaults the defendant, the contingent fee would be based on the amount awarded for the negligence claim without any reduction for an assault counterclaim. A reasonable client

would not expect that the lawyer's fee would be diminished under these circumstances.

But a slight change in the facts may make a difference. Suppose that the client had assaulted the defendant before he retained counsel. Under the Restatement's rationale, the lawyer probably has an obligation to conduct due diligence to determine if the prior dealings the client has had with the defendant provide any basis for counterclaims. If the client is forthright and discloses all material facts, then the lawyer and the client should expect that "any amount received" may be reduced by a counterclaim. It would then be incumbent on the lawyer to obtain an express provision in the fee agreement that the contingency fee would not be reduced by counterclaims or offsets. If, however, the client failed to disclose material facts in response to inquiries by the lawyer, the outcome should be different. If, in response to the lawyer's questions, the client conceals information or makes misrepresentations, the lawyer would have a cause of action based on fraud in the inducement and should be able to receive a fee based on the amount the client recovered for the claim he hired the lawyer to pursue, without regard to counterclaims.

I turn to the facts in this case.

## II

The Levines retained Barry Snell's firm to sue the Smiths for defects in the foundation of the home that the Smiths had sold to the Levines. The Levines' fee agreement provided that the Snell firm would be paid one-third of "any amount received by settlement or recovery and to receive such payments, Client assigns to attorney a 33–1/3% (1/3) undivided interest in his cause of action." The term "any amount received by settlement or recovery" is unambiguous, as both the trial court and the court of appeals held. It means any dollar amount received by the Levines.

The dollar amount that the Levines would otherwise have received from their claims against the Smiths was reduced by a counterclaim that was a direct result of advice from their counsel. Ron Levine testified without contradiction that Barry Snell told him to stop making mortgage payments to the Smiths. Levine could not remember if that instruction was given before or after the contingent fee agreement was signed on March 3. He did recall that he made the March mortgage payment, but none thereafter. But regardless of precisely when Snell told Ron Levine to stop making mortgage payments, Snell is presumed to have known that cessation of payment could well lead to acceleration of the Levines' note and a counterclaim by the Smiths for the full amount that the Levines owed. Snell did not obtain an express agreement from the Levines that attorney's fees would be based on the amount awarded for the Levines' affirmative claims without any reduction for a counterclaim, even though Snell should have anticipated a counterclaim.

As detailed by the Court, because of nonpayment, the Smiths did in fact accelerate the note that was secured by the mortgage and assert a counterclaim. Both the Levines and the Smiths prevailed on their respective claims. In arriving at the judgment that was to be rendered, the trial court deducted the amount awarded to the Smiths from the amount awarded to the Levines. The Smiths paid that net amount to the Levines, and the Levines tendered it to Snell's firm. The amount of attorney's fees that the Levines paid was thus more than one-third of their net recovery. It was all of their net recovery. Snell's firm later sued the Levines for additional attorney's fees based on the Le-

vines' gross, rather than net, recovery. The firm filed a motion for summary judgment, and the Levines filed a cross-motion for summary judgment.

The general rule that, absent a prior agreement to the contrary, contingent fees are to be computed net of any offsets or credits, is the starting point in determining what was owed to the Snell firm. *See* RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 35(2) cmt. d. In order to withstand summary judgment for the Levines, it was incumbent on the Snell firm to assert facts that would entitle it to recover a fee based on the Levines' gross, rather than net, recovery. It did not do so. The Snell firm did not assert that it had advised the Levines to continue to pay their mortgage, of the consequences if the Levines defaulted, and that the Levines stopped paying in disregard of that advice. The Snell firm simply asserted that its fee agreement applied to the gross recovery it obtained for its client. Under these circumstances, the Levines were entitled to summary judgment that the Snell firm was not owed any additional sums.

I recognize that in this case, there is a strong equitable argument that the counterclaims against the Levines did not really diminish their recovery because they paid no more to the Smiths than was owed under a promissory note, and the Levines received the title to their home free and clear of any indebtedness. However, on balance, it seems that a reasonable person in the Levines' shoes would view one-third of "any amount received" to mean money that they were able to put in their pockets, not one-third of non-cash value that they received as a result of the suit. Suppose that the Levines' judgment against the Smiths had equaled the Smiths' judgment against the Levines ($161,851.38), and there was no net recovery for the Levines. A reasonable person in the Levines' shoes

would not expect that they would have to find a means of paying their counsel over $53,000 in cash. Paying such an amount may have been difficult, if not impossible, for some homeowners without selling their home. At the time the Levines' suit against the Smiths was concluded, homeowners could not use their homestead as collateral unless the loan was for purchase money or improvements on the homestead. *Benchmark Bank v. Crowder*, 919 S.W.2d 657, 660 (Tex.1996) (construing former TEX. CONST. art. XVI, § 50, prior to the 1998 amendment). If "any amount received" included extinguishment of a mortgage, clients like the Levines could be placed in an untenable position by agreeing to pay their attorney one-third of any amount received and then following their attorney's advice to default on their mortgage.

I am persuaded that when a contingent fee agreement uses the term "any amount received," that term should be given its ordinarily-understood meaning, which is that the fee will be based on dollar amounts received. In the absence of facts that would give rise to a cause of action against a client for fraud in inducing the contingent fee agreement or breach of an express or implied covenant to cooperate in the prosecution of the claim, the fee agreement should limit counsel's recovery to one-third of the net cash amount recovered by the client.

As the Court points out, the Levines do not seek to recover overpayments they made to the Snell firm. Accordingly, although I am not in complete accord with the Court's rationale, I agree with the Court that the judgment in this case should be a take-nothing judgment in favor of the Levines.

### III

In addition to my concern about some of the Court's categorical statements regard-

ing the circumstances under which counterclaims can reduce a contingent fee, it seems that there is some tension between the Court's reasoning in this case and our recent holding in *Lopez v. Muñoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857 (Tex. 2000). In *Lopez*, the parties' fee agreement provided that if the case were "appealed to a higher court," the contingent fee would increase by an additional five percent. The plaintiffs prevailed at trial, and while settlement negotiations were pending, the defendant filed a cash deposit in lieu of a bond to ensure that its appeal would be timely if negotiations were not fruitful. A few days later, the case settled, and the defendant paid the plaintiffs a large sum. The plaintiffs' counsel demanded the additional five percent under the contingency agreement. This Court held that the case had been appealed and that the lawyers did not breach their contract or a fiduciary duty by charging the additional five percent. However, the three justices who decided the case in the court of appeals had concluded that when a case is "appealed to a higher court" was susceptible to more than one reasonable meaning. *See Lopez v. Muoz, Hockema & Reed, L.L.P.*, 980 S.W.2d 738, 741 (Tex. App.—San Antonio 1998) (holding that "[w]hatever 'appealed to a higher court' means, it means more than filing a cash deposit in lieu of a cost bond, and that is all that occurred here.")

The Court's decision today could be misread to mean that if *Lopez* were before the Court now, the lawyers in *Lopez* would have been obligated to alleviate any confusion about what "appealed to a higher court" meant when they first entered into the contingency fee agreement, even though this Court held in *Lopez* that the fee agreement was unambiguous. *See Lopez*, 22 S.W.3d at 860. I do not think that the Court intends such a result by virtue of its decision in this case, and I would

make it clear that a lawyer should not have to forfeit all or part of a fee for failure to clarify what an unambiguous agreement means. An unambiguous fee agreement between a client and its counsel should be given effect as written. But as I have said above, this does not foreclose claims that a lawyer may assert against a client for misrepresentation in inducing the fee agreement or breach of an express or implied covenant not to destroy or diminish the value of the contract.

## IV

Because of the disposition of this case, an important issue is not before the Court. But it bears mention. The Levines' fee agreement provided that in addition to the one-third contingency fee, they were obligated to pay the Snell firm any amounts awarded by the court as attorney's fees. The agreement said, "[a]ny attorneys fees awarded by any court shall go to my [the Levines'] attorneys in addition to the above percentages of recovery."

The Restatement concludes in section 38 that "[a]n agreement providing that a lawyer is to receive both a standard contractual fee award and a fee awarded by a court, without crediting the award against the contractual fee, is presumptively unreasonable." RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 38 cmt. f. Lawyers who have these types of agreements should beware, if not forewarned.

\* \* \* \* \* \*

I join in the Court's judgment, but for the foregoing reasons, I do not join in its opinion.

Justice HECHT, joined by Justice ABBOTT, dissenting.

Conspicuously, the Court does not say that the contract in this case is ambiguous or contrary to any public policy. Yet the

Court refuses to give effect to its plain language for this one reason: the contract is a contingent fee agreement between a lawyer and client. I disagree, and therefore dissent.

The Smiths sold the Levines their home, taking a promissory note that called for monthly payments and was secured by a deed of trust. When the Levines discovered problems with the home's foundation, they retained the law firm of Bayne, Snell & Krause to sue the Smiths for failing to disclose the problems before the sale. The Levines contracted in writing to pay the firm any attorney fees awarded by the court and, in addition, a contingent fee equal to "33–1/3% (1/3) of any amount received by settlement or recovery". On their lawyers' advice, the Levines discontinued their mortgage payments, and the Smiths accelerated the note and counterclaimed for the balance due. The trial court rendered judgment for the Levines, awarding them damages and attorney fees, and for the Smiths on their counterclaim, awarding them the amount due on the note and attorney fees. The Smiths' award was offset against the larger award to the Levines, leaving the Levines with a net judgment. After the judgment was affirmed on appeal,[1] the Smiths paid the judgment plus interest, and the Levines endorsed the check over to the Snell firm in payment of their legal fee. The Snell firm accepted the check as partial payment, insisting that its fee should be calculated on the damages awarded the Levines before the offset; the Levines took the position that the fee should be calculated on the judgment net of the offset. (The firm also asserted that it was contractually entitled to the attorney fees awarded in the judgment, and the Levines have not challenged that assertion.) After the Levines sold their home and still refused to pay what the Snell firm claimed was owed, the firm sued the Levines. The trial court granted summary judgment for the firm, and the court of appeals affirmed.[2]

The value of the Levines' recovery was the same as it would have been had they continued to make their mortgage payments to the Smiths:

they received—

$$(\text{Damages} - \text{Mortgage}) + \text{Home}$$

they would have received—

$$= \text{Damages} + (\text{Home} - \text{Mortgage})$$

Unquestionably, the Levines received a financial benefit from the cancellation of their mortgage debt to the Smiths, and the Court acknowledges this fact. That benefit was converted to cash when the Levines sold their home. In my view, the cancellation of the debt was an "amount received" by the Levines within the meaning of their contingent fee agreement with the Snell firm. The Levines owned their home free and clear, and each month they had cash money in their pockets from not having to make a mortgage payment. But even if the canceled debt was not an "amount received", surely the money from the sale of the home was.

The Court does not disagree with this but holds, nevertheless, that the amount of the Snell firm's contingent fee must be calculated on the net judgment. Had the Levines not discontinued their mortgage payments, their legal bill would have been

**1.** *Smith v. Levine,* 911 S.W.2d 427 (Tex.App.— San Antonio 1995, writ denied).

**2.** —— S.W.2d ——, 1999 WL 33257838 (Tex. App.—San Antonio 1999).

one-third of the total damages their lawyers recovered for them against the Smiths. The Levines would have been required to continue making mortgage payments to the Smiths as they had been doing, and when the home was sold, the Levines would have been required to pay the balance due on the note. But because the Levines discontinued their mortgage payments and recovered instead a smaller damages award plus a home free and clear of any debt, the Court holds that they owe their lawyers less. Indeed, had the Levines' damages only equaled the balance due on their note, the Court would hold that the Snell firm was not entitled to any contingent fee at all, even though the Levines would have their home debt-free. The Court gives three reasons for the result it reaches.

First, the Court points to section 35(2) of the *Restatement of the Law Governing Lawyers,* which provides that "[u]nless the contract construed in the circumstances indicates otherwise, when a lawyer has contracted for a contingent fee, the lawyer is entitled to receive the specified fee only when and to the extent the client receives payment." [3] But even if the Levines did not "receive payment" of the total value recovered by their judgment when the Smiths paid it off, they certainly received payment when they sold their home free and clear of any mortgage lien. At most, section 35(2) indicates that payment of a legal fee based on the cancellation of the Levines' mortgage was not due until they sold their home. Consistent with section 35(2), the Snell firm did not insist on payment until the home was sold. Nothing in section 35(2) so much as hints that no fee was owed based on the cancellation of the debt.

Second, the Court points to a sentence in comment d to section 35(2) that states: "In the absence of prior agreement to the contrary, the amount of the client's recovery is computed net of any offset, such as recovery by an opposing party on a counterclaim." [4] This may be a good rule in some circumstances, although I doubt that it should apply in every case. The nature of the offset or counterclaim, the liquidity of the client's recovery, and the ordinary expectation of clients in the circumstances must be taken into account. But even if the rule were applied here, it would not resolve the dispute but merely beg the question whether the Levines' contract to pay the Snell firm one-third of "any amount received" was a "prior agreement" that called for the fee to be calculated on everything the Levines received, including the cancellation of their mortgage debt. If it was, then comment d would favor the Snell firm's position.

Third, since neither section 35(2) nor its comment d, according to their express terms, justifies calculating the Snell firm's contingent fee based on the net judgment, the Court attempts to justify denying the Snell firm the fee it contracted for by reciting several truisms: that a lawyer is better able than most clients to anticipate the various possibilities for calculating a contingent fee and contract for them, that clients trust their lawyers, that as between a lawyer and a client the lawyer may justifiably be required to bear risks of uncertainty, especially with respect to fees owed, and that lawyers should clearly communicate with clients concerning fees and other matters. It is hard to disagree with any of these statements as general propositions, but it is impossible to see how they can justify avoiding the plain language of a contingent fee agreement and concluding

---

**3.** Restatement of the Law Governing Lawyers § 35(2) (2000).

**4.** *Id.* § 35(2), cmt d.

that "any amount received" does not mean *any* amount received but only *some* amounts received. Lawyers should always strive for clear communications with clients, but that obvious pronouncement is irrelevant in a case like this in which *the Court does not find the agreement unclear in any respect.*

The Court's reasons for refusing to give effect to the plain meaning of the agreement in this case could also have been applied to deny recovery of legal fees in *Lopez v. Munoz, Hockema & Reed, L.L.P.,*[5] a case decided just last Term, but the Court did not mention even one of them. There we held that the clients' agreement to pay a higher contingent fee if their case was "appealed to a higher court" meant—unambiguously and as a matter of law—that the fee was owed when the notice of appeal was filed.[6] We rejected the clients' argument that the phrase could have meant the filing of a brief, the presentation of argument, or the submission of a case for decision.[7] We did not consider whether the agreement should have been construed against the lawyers who drafted it, or whether they were better able to draft agreements and anticipate contingencies, or whether their clients trusted them, or whether the agreement should have been clearer—all of the reasons the Court gives today for agreeing with the clients. The Court completely ignores *Lopez*, leaving readers to wonder why "appealed to a higher court" should be given effect and "any amount received" should not.

JUSTICE OWEN argues that cancellation of the Levines' mortgage debt was not cash and therefore was not an "amount re-

ceived". Cancellation of the debt put real money in the Levines' pockets. As the first of each month rolled around, the Levines had more cash because they no longer had to make mortgage payments. But even if this were not persuasive, at one point the Levines obtained actual cash from the sale of their home, and the Snell firm waited until then to insist on payment of its full fee. JUSTICE OWEN argues that

> [a] reasonable person in the Levines' shoes would not expect that they would have to find a means of paying their counsel over $53,000 in cash. Paying such an amount may have been difficult if not impossible for some homeowners without selling their home.[8]

Perhaps so, but this simply ignores the fact that the Levines *did* sell their home, and that *only then* did the Snell firm request payment of its fee. Surely no reasonable client would expect to owe his lawyer nothing for removing an encumbrance from his home. Even if the Levines did not owe the Snell firm any additional fee until they sold their home, surely they did once they had the cash in hand.

JUSTICE OWEN also faults the Snell firm for not obtaining "an express agreement from the Levines that attorney's fees would be based on the amount awarded for the Levines' affirmative claims without any reduction for a counterclaim, even though Snell should have anticipated a counterclaim."[9] The Snell firm should certainly have anticipated a counterclaim, but it is hard to fault the firm for failing to clarify its fee agreement when no court so far—including this one—has held that its agreement was unclear in any respect. Until today, the courts that have considered the

---

**5.** 22 S.W.3d 857 (Tex.2000).

**6.** 980 S.W.2d 738, 741 (Tex.App.—San Antonio 1998).

**7.** *Id.*

**8.** *Ante* at 99.

**9.** *Ante* at 98.

firm's legal position have agreed with it. Had the firm ever dreamed that someday, years later, this Court would refuse to enforce the fee agreement that no one will say is ambiguous, I suspect it would have counseled the Levines to keep making their mortgage payments.

I cannot help thinking that the Court's result must be influenced by its view, nowhere expressed, that it is unreasonable for clients to pay almost their entire recovery in legal fees, a view with which I am quick to sympathize. This may explain why the Court is driven to employ a contract construction analysis that is so deeply flawed. The Levines could have complained here that their fee contract was unreasonable, but they have not done so. They have not even challenged their agreement to pay the Snell firm the attorney fees awarded by the court in addition to the contingent fee, as they might have.[10] As this case comes to us, the only issue is the proper construction to be given plain language in a fee contract. The Court could hold that the contract language is ambiguous, but then it would be inconsistent with its decision in *Lopez*, which is not even a year old. The Court could hold that a contingent fee must always be calculated on a net judgment, regardless of what the contract says, perhaps as a matter of public policy, but it is unwilling to go that far. The Court could join JUSTICE OWEN's view that lawyers should be prescient as Nostradamus or risk the consequences, but this view does not appeal to the Majority, either. Left with no acceptable alternative—except, of course, enforcement of the contract according to its terms—the Court bases its decision on one fact and one fact alone: that the parties to the contract are lawyer and client. Con-

tract law in Texas should not be contorted to try to reach what a few judges regard as a fair result in a single case.

One can easily imagine many situations in which it would be unreasonable to conclude that a client had received something when it was offset by other awards. This is not such a case. The Snell firm obtained a real, cash benefit for the Levines, and when it did, it was entitled to be compensated for its efforts according to the clear terms of their agreement. The firm certainly should not be denied recovery merely because it is comprised of lawyers.

---

10. *See* RESTATEMENT OF THE LAW GOVERNING LAWYERS § 38, cmt f (2000) ("A contract providing that a lawyer is to receive both a standard contractual fee and a fee award, without crediting the award against the contractual fee, is presumptively unreasonable under § 34.").