U.S. DENRO STEELS, INC. d/b/a Jindal United Steel Corp., Saw Pipes USA, Inc., and JSW Steel (USA) Inc., Appellants,

v.

Ed D. LIECK, Appellee.

No. 14–09–01008–CV.

Court of Appeals of Texas, Houston (14th Dist.).

April 5, 2011.

E.R. Norwood, Liberty, Roger D. Townsend, Houston, Ladawn Horn Conway, Dallas, for appellants.

Ron S. Rainey, David M. Gunn, Chad Flores, Vincent L. Marable III, Houston, Zeb Davidson Zbranek, Liberty, for appellee.

Panel consists of Justices SEYMORE, BOYCE, and CHRISTOPHER.

## OPINION

TRACY CHRISTOPHER, Justice.

In this breach-of-contract case, we construe an attorney's contingency-fee agree-

ment with his corporate clients. The attorney sued his clients, alleging that they failed to pay him a percentage of their assets. The trial court granted traditional summary judgment in favor of the attorney and awarded him nearly $13.5 million plus interest and costs. Under the unambiguous terms of the contract, however, the parties agreed to pay the attorney only a percentage of the amount awarded and recovered in the lawsuit in which he represented them. Because his clients were awarded nothing in that suit, we reverse and render judgment that the attorney takes nothing.

## I. BACKGROUND

U.S. Denro Steels, Inc. ("Denro") owned and operated a steel plate mill in Chambers County; SAW Pipes USA, Inc. ("SAW") owned and operated an adjacent pipe mill.[1] In 1998, Denro and SAW opened revolving credit accounts and granted the lender a security interest in all of their property and property interests. Foothill Capital Corporation later acquired the loans of $850,000 to SAW and $6.5 million to Denro (the "Foothill loans") and assigned them to Klöckner Steel Trade, GmbH ("KST").[2] Denro and SAW acted as guarantors of one another's loans, and each company granted KST security interests in its own property as collateral.

On July 5, 2001, SAW as borrower and Denro as SAW's guarantor acknowledged SAW's default and indebtedness of $328,313.72 on its Foothill loan. On the same date, Denro as borrower and SAW as Denro's guarantor acknowledged Denro's default and indebtedness of

$5,393,658.64 on its Foothill loan. At that time, a separate company, Jindal Iron & Steel Co., Ltd. ("JISCO"),[3] was indebted to the same lender, KST, for $22.8 million ("the JISCO Debt"). In exchange for forbearance on SAW and Denro's defaults, SAW agreed to act as guarantor of the JISCO Debt.

In November 2001, SAW entered into a Master Pipe Agreement with Southern Texas Steel, LLC ("Southern"), and Denro entered into a Master Plate Agreement with the same company. Under these agreements, Southern was to be the exclusive provider of steel slabs for Denro's plate mill to process into steel plates. Southern sold some of the steel plates, and sent some for further processing at SAW's pipe mill; the finished pipe also was then sold. According to Denro and SAW, Southern was KST's agent and improperly converted Denro and SAW assets worth more than $14 million.

### A. The *Southern* Suit

When Southern announced in August 2003 that it no longer would provide steel for their mills, Denro and SAW filed suit in Chambers County against Southern, KST, and related companies (Cause No. 20694, the "*Southern* suit"). Allan Van Fleet was their lead counsel. They retained Ed Lieck as local counsel in December 2003, but the parties did not execute a fee agreement until February 22, 2006. In the agreement, they agreed to pay Lieck a percentage of the "recovered judgment(s) awarded" in the *Southern* suit. Specifically, they agreed to pay him 10% of the first

1. Appellant JSW Steel (USA) Inc. is the successor by merger to both of these companies and is included in our references to them. For the sake of clarity, however, we refer to all of the companies by the names used when these events began.

2. KST's successor is Balli Klöckner GmbH.

3. JISCO's successor is JSW Steel, Ltd. The founder of JISCO is related to the founder of Denro and SAW; the companies themselves are not related.

$50 million and 5% of the amounts over $50 million awarded and recovered in the suit.

In June 2004, Southern filed counterclaims for breach of the Master Pipe Agreement and Master Plate Agreement. The following month, KST filed a notice of its intent to foreclose on SAW's pipe mill, but withdrew the notice after SAW applied for an injunction. In March 2005, KST again filed a notice of its intent to foreclose, and SAW and Denro again applied for a temporary injunction. Finding that an injunction was necessary to preserve the status quo during the litigation, the trial court temporarily enjoined KST and Southern from foreclosing against the pipe mill.

## B. The JISCO Arbitration and Settlement

Meanwhile, KST initiated arbitration proceedings in Stockholm to collect the JISCO Debt directly from the primary obligor. In its award of September 4, 2006, the arbitral tribunal concluded that JISCO owed KST more than $20.8 million. JISCO initially appealed the award, but JISCO and KST later settled their disputes. They agreed that JISCO would pay KST approximately $22.9 million, and the parties would dismiss with prejudice the arbitration award, the appeal, and pending litigation between them in Belgium, Holland, India, and New York. By settling its debt to KST, JISCO eliminated SAW's liability to KST as JISCO's guarantor.

## C. The *Southern* Settlement

SAW and Denro also settled their disputes with KST and Southern. SAW and Denro agreed to make a payment of $1.5 million on the Foothill loans, and all four parties agreed to release all claims in the *Southern* suit. By joint motion of the parties, the *Southern* trial court dismissed all claims in the suit with prejudice on June 7, 2007.

## D. Lieck's Suit

When Lieck learned that the *Southern* suit had settled, he sued Denro and SAW for breach of his contingency-fee contract.[4] Denro and SAW moved for traditional summary judgment on the ground that the parties agreed Lieck would be paid a percentage of any recovered judgment awarded in the *Southern* suit. They argued that because Denro and SAW were awarded nothing, Lieck was due nothing. Lieck also moved for traditional summary judgment, arguing that under the terms of the contingency-fee agreement, he was entitled to a percentage of the one *billion* dollars that the March 2005 temporary injunction in the *Southern* suit was worth to Denro, SAW, and a third company he identified as Jindal Enterprises LLC, d/b/a Jindal Stainless Corporation.

The trial court, Judge Chap Cain, denied Denro and SAW's motion and granted Lieck's motion except as to the amount of damages.

Lieck then moved for traditional summary judgment as to the amount due him under the contingency-fee contract. He argued that he was entitled to 10% of the fair market value of SAW's assets under $50 million, and 5% of fair market value of SAW's assets over $50 million. Based on evidence that the fair market value of SAW's pipe mill, equipment, and stock was at least $219.9 million on the day the claims in the *Southern* suit were dismissed with prejudice, he asked the trial court to award him $13,495,000.00, together with pre- and post-judgment interest.

4. Lieck asserted additional causes of action that subsequently were nonsuited or severed.

Fifteen months after granting summary judgment as to liability, the trial court granted Lieck's motion as to the amount of damages. The judgment became final two weeks later when the trial court struck Denro and SAW's counterclaims and severed Lieck's pending claim for attorneys' fees and his motion for sanctions. The trial court denied Denro and SAW's motion for new trial, and they superseded and appealed the judgment.

## II. STANDARD OF REVIEW

In the dispositive issue in this case, Denro and SAW assert that the trial court erred in denying their motion for summary judgment and granting summary judgment in Lieck's favor. Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex.2005). When we review the rulings on cross-motions for summary judgment, we review the evidence presented by each party, determine de novo all questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London,* 327 S.W.3d 118, 124 (Tex.2010) (sub. op.); *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.,* 253 S.W.3d 184, 192 (Tex.2007).

## III. ANALYSIS

When interpreting a contract, our primary concern is to ascertain and give effect to the written expression of the parties' intent. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.,* 207 S.W.3d 342, 345 (Tex.2006). By this approach, we "strive to honor the parties' agreement and not remake their contract by reading additional provisions into it." *Gilbert Tex.*

*Constr.,* 327 S.W.3d at 126. The parties' intent is governed by what is written in the contract, not by what one side contends they intended but failed to say. *See id.* at 127. Thus, "it is objective, not subjective, intent that controls." *Matagorda County Hosp. Dist. v. Burwell,* 189 S.W.3d 738, 740 (Tex.2006) (per curiam) (citing *City of Pinehurst v. Spooner Addition Water Co.,* 432 S.W.2d 515, 518 (Tex. 1968)). The intent manifested in the contract's language "is not changed simply because the circumstances do not precisely match the scenarios anticipated" when the contract was formed. *SAS Inst., Inc.v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex.2005) (per curiam). We therefore give terms their plain and ordinary meaning unless the contract indicates that the parties intended a different meaning. *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.,* 294 S.W.3d 164, 168 (Tex.2009).

We do not consider only those parts of a contract that favor one party, *City of Keller v. Wilson,* 168 S.W.3d 802, 811 (Tex.2005), but examine the writing as a whole to harmonize and give effect to all of the contract's provisions. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). We also bear in mind the particular business activity to be served, and when possible and proper to do so, we avoid a construction that is unreasonable, inequitable, and oppressive. *Frost Nat'l Bank v. L & F. Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005) (per curiam); *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527, 530 (Tex. 1987).

If a contract is not ambiguous, courts must enforce it as written without considering parol evidence for the purpose of creating an ambiguity or giving the contract "a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden,* 266 S.W.3d 447, 450 (Tex.2008) (per curiam). A contract is not

ambiguous simply because the parties advance conflicting interpretations. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). Instead, we determine whether a contract is ambiguous by looking to the contract as a whole in light of the circumstances present when the parties executed it. *Sun Oil Co. (Del.) v. Madeley,* 626 S.W.2d 726, 731 (Tex.1981); The contract is not ambiguous if it can be given a certain or definite meaning as a matter of law. *Universal Health Servs., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 746 (Tex.2003).

## A. The contract is not ambiguous.

The contract at issue in this case is a simple contingency-fee contract less than two pages long, containing just three provisions. Its relevant language is as follows:

> This will confirm the terms of our agreement between myself, Ed D. Lieck, ... [hereinafter referred to as "Local Counsel") and [Denro] and [SAW], (hereinafter referred to as "Plaintiffs").
>
> 1. *Parties ['] Agreement.* Plaintiffs agree that Local Counsel will accept responsibility for local duties in Cause No. 20694, [the *Southern* suit], in the District Court of Chambers District[5] [sic]. ...
>
> . . .
>
> 3. *Local Attorney's Fees.* Local Counsel shall receive ten (10%) percent of any and all recovered judgment(s) awarded in the aforementioned case up- to the first fifty million ($50,000,000.00) dollars. Thereafter Local Counsel shall receive five (5%) percent of any and all remaining recovered judgment(s) awarded in this case.

**5.** Capitalization normalized.

Thus, to establish the amount owed to Lieck, one need only locate the relevant "judgment," identify what was "awarded" to Denro and SAW in that judgment, and determine the extent to which the judgment awarded was actually "recovered." Of the first $50 million awarded to Denro and SAW in the judgment and actually recovered, Lieck is entitled to ten percent. If the trial court awarded Denro and SAW more than $50 million in the judgment and they actually recovered more than $50 million of that award, then Lieck would be entitled to an additional five-percent share of the additional sum recovered.

## B. Lieck's fee is based only on the June 7, 2007 judgment in the *Southern* suit.

Identifying the relevant "judgment" is straightforward. The parties expressly agreed that Lieck's fee was a percentage of the "recovered judgment(s) awarded *in the aforementioned case.*" (emphasis added). They also identified the parties Lieck would represent—Denro and SAW—and the only proceeding in which he would represent them—the *Southern* suit, Cause No. 20694 in the District Court of Chambers County. Thus, Denro and SAW agreed to pay Lieck, and Lieck agreed to accept payment, based solely on the judgment in the *Southern* suit.

That judgment provides in its entirety as follows:

> On this day came to be heard the Parties' Joint and Agreed Motion to Dismiss with Prejudice. The motion is GRANTED.
>
> It is, therefore, ORDERED that (1) each and every of each of the Parties' claims and causes of action in this lawsuit are DISMISSED WITH PREJUDICE and (2) all attorneys' fees, ex-

penses, and costs of court are to be borne by the Party that incurred them.

It is so ORDERED.

Like the contingency-fee contract, the judgment is unambiguous: the trial court awarded the parties nothing. Thus, Lieck was entitled to nothing. *See Bankers Home Bldg. & Loan Ass'n v. Wyatt*, 139 Tex. 173, 162 S.W.2d 694 (1942) (explaining that an unambiguous judgment is to be construed as it was written).

## C. The "Van Fleet memorandum" does not alter the terms of the parties' agreement.

■ Many of Lieck's arguments for greater compensation rely at least in part on an unsigned memorandum apparently written to Denro and SAW by Allan Van Fleet, their lead litigation counsel. The "Van Fleet memorandum" outlines the history of the *Southern* suit through February 7, 2007. It contains no reference to Lieck or the contingency-fee agreement, and does not purport to alter the agreement's unambiguous terms.

According to Lieck, the memorandum establishes that Denro and SAW's "real goal" was to "void [the] security agreements.... That is what they wanted, and that is exactly what they got at the end of the day." This argument misses the point. The question before us does not focus on what Denro and SAW wanted; rather, it focuses on what Denro, SAW, and Lieck *agreed* in their contract. They agreed that Lieck would provide legal services as their local counsel in one specific lawsuit, and they would pay him a percentage of the amount that was both awarded in the judgment and recovered.

## D. Denro and SAW did not agree to pay Lieck a percentage of a *recovery*.

■ In a related argument, Lieck contends he is entitled to a percentage of what Denro and SAW ultimately "recovered," whether directly or indirectly, whether through this suit or otherwise. In support of this position, he asserts that "[t]he phrase 'recovered judgment(s) awarded' has never been construed by a court, but the word 'recovery' has." He then interprets the fee agreement in light of the word *recovery*, and relying on cases in which courts addressed that word's meaning.

That argument has many flaws, but it is sufficient to mention just one: the word *recovery* never appears in the contingency-fee agreement. The parties instead agreed that Lieck would be paid a percentage of the "recovered *judgment(s)* awarded." *Recovered* and *awarded* are adjectives used to modify the word *judgment*.[6] And the word *judgment* has been construed by Texas courts.

■ "A judgment is the final consideration and determination of a court of competent jurisdiction on the matters submitted to it." *Speer v. Stover*, 711 S.W.2d 730, 734 (Tex.App.-San Antonio 1986, no writ). Its function "is to conclude the controversy between the parties." *Lindley v. Flores*, 672 S.W.2d 612, 614 (Tex. App.-Corpus Christi 1984, no writ) (citing *Jones v. Springs Ranch Co.*, 642 S.W.2d 551 (Tex.App.-Amarillo 1982, no writ)); *see also* Tex.R. Civ. P. 300 (identifying when "a court shall render judgment"); Tex.R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it

---

6. Lieck also contends that *recovered* was used in the contract as a synonym for *restored*. But if this were so, then his fee would be equal to a percentage of the "*restored* judgment(s) awarded in the aforementioned case." Because Denro and SAW were not "awarded" a "restored judgment" in the *Southern* suit, Lieck still would be owed nothing.

is otherwise specially provided by law."). Because Lieck is an attorney and this contract concerned the legal services he was to perform in Texas civil litigation, we understand Lieck to have intended the word *judgment* to be used in the sense in which it is used in Texas cases and in the Texas Rules of Civil Procedure. *See Hewlett–Packard Co. v. Benchmark Electronics, Inc.*, 142 S.W.3d 554, 561 (Tex.App.-Houston [14th Dist.] 2004) ("We construe a contract from a utilitarian standpoint, bearing in mind the particular business activity sought to be served."); *see also Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 54 Tex. Sup.Ct. J. 347 (Tex. Dec. 17, 2010) (op. on reh'g) ("It is a well recognized canon of construction that technical words are to be interpreted as usually understood by persons in the business to which they relate, unless there is evidence that the words were used in a different sense."). Here, his clients were awarded nothing in the only judgment at issue.

### E. Denro and SAW did not agree to compensate Lieck based on the value of the temporary injunction.

▮ Lieck additionally argues that he is entitled to compensation based on the temporary injunction issued in the *Southern* suit in 2005, but according to the Texas Supreme Court, "[t]here is a clear legal distinction between an 'order' granting injunctive relief and a 'judgment'. . . ." *Allen v. Gulf Oil Corp.*, 139 S.W.2d 207, 211 (Tex.Civ.App.-Austin 1940, writ ref'd). Nothing is "recovered" or "awarded" through a temporary injunction, because a temporary injunction merely preserves the status quo pending trial on the merits. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex.2002). It is an extraordinary equitable remedy. *Moon v. Estate of Moon*, 221 S.W.3d 327, 329 (Tex.App.-Texarkana 2007, no pet.). A temporary injunction is not a final decision on disputed facts. *Thomas v. Beaumont Heritage Soc'y*, 296 S.W.3d 350, 351 (Tex.App.-Beaumont 2009, no pet.). Moreover, the temporary injunction did not survive the final judgment in the *Southern* suit dismissing all of the parties' claims with prejudice; thus, unlike the judgment, the temporary injunction no longer exists. *See Butnaru*, 84 S.W.3d at 204; *EOG Res., Inc. v. Gutierrez*, 75 S.W.3d 50, 53 (Tex. App.-San Antonio 2002, no pet.) (explaining that the reason a trial date must be included in the injunction order is "to protect the parties from being subject to a temporary injunction made permanent by a court's failure to set the matter for a final determination on the merits").

### F. The arbitration and settlement agreement between KST and JISCO are irrelevant to Lieck's breach-of-contract claim against Denro and SAW.

▮ Lieck also argues that he is entitled to compensation in connection with the arbitration and settlement of JISCO's debt to KST. This argument is contrary to every term in the contract. Denro and SAW are not JISCO; Lieck is not JISCO's attorney; the arbitration in Stockholm and the settlement of the claims between JISCO and KST are not "Cause No. 20694 . . . in the District Court of Chambers [County]"; neither an arbitration award nor a settlement agreement is a judgment; and a multimillion-dollar contractual payment to Denro and SAW's adversary in the *Southern* suit is not a multimillion-dollar "recovered judgment awarded" to Denro and SAW in that action.

### G. Denro and SAW's interpretation of the contract is reasonable.

▮ Lieck further contends that Denro and SAW's interpretation of the contract cannot be considered reasonable because

he then would be paid nothing for his services. But that is the point of a contingent fee: it is "contingent on the outcome of the matter for which the services were obtained." TEX. GOV'T CODE ANN. § 2254.101(1) (Vernon 2008). An attorney who works pursuant to a contingency-fee contract bears the risk that no fee will be paid. *Levine v. Bayne, Snell & Krause, Ltd.*, 40 S.W.3d 92, 95 (Tex.2001); *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997). We do not consider the contract unreasonable simply because the foreseeable risk it allocated actually materialized.

## IV. CONCLUSION

Denro and SAW were entitled to judgment as a matter of law. Because the trial court in the *Southern* suit awarded them nothing in the judgment, they were not contractually obliged to pay Lieck anything. We therefore reverse the trial court's judgment and render judgment that Lieck takes nothing on his breach-of-contract claim.